Defender gets to go first. How are you? Very well, thank you. May it please the court? This court should vacate the judgment below for two reasons. First, the district court assigned the wrong grade of violation to the defendant and second, it plainly erred in considering the need for just punishment in respect to the defendant's conditions of supervised release, violation of the defendant's conditions of supervised release. I'm of course pleased to go where the court wants to take me today but left my own devices I would begin with the guideline. The definition of a grade B violation under 7b 1.1 now 7c 1.1 is conduct constituting an offense punishable by more than a year's imprisonment. The defendant's conduct on supervised release was to run away from a police officer. That conduct constitutes, which is to say wholly constitutes, composes, forms the offense of evading arrest under Texas. The legal world is very much in the realm of having to define terms. Why can't conduct this as reasonably defined as that action by someone with a prior conviction? It's supposed to status an individual who does a certain thing as the overall conduct. I think that that is packing into the concept of conduct, the concept of status, which is ordinarily defined in opposition to it. If you look at the way that the government tries to define the defendant's conduct in this case, it is evading arrest after having been previously convicted of evading arrest, but that really gives away the game when you have to use a passive verb. But your best case is Lee, the Seventh Circuit case. That's right. And that's the case that the Seventh Circuit itself overruled. Absolutely. In Trotter. That's right. And so you're asking us to create a circuit split to go your way. I am. A pretty substantial circuit split. I mean, lopsided. I am. And there isn't any question that all, or if you want to, you know, depending on how you want to treat Lee, of the out-of-circuit cases are against Lee. A couple words about that. The first is that this Court has an independent duty to exercise its independent judgment about the meaning of the legal provision before it. And if it engages in herding, which is to say that it rules against Mr. Perry, in order to prevent a circuit out-circuiting a provision in the Sentencing Reform Act, which gives the Sentencing Commission notice that it might need to do an amendment, because it's not providing fair notice to the defendants. The second thing I want to say about the out-of-circuit cases that are against me, I own that, is that they all suffer from a common flaw, which is that they all substitute their view of the Sentencing Commission's goal for its plain text. What they view the Sentencing Commission's goal as in promulgating Note 1 was to broaden the universe of people who get Grade B violations, to make more people get Grade B violations. And that's certainly true, that more people get Grade B violations because Note 1 to 7b1.1 captures uncharged conduct. But you have to recognize that in choosing the word conduct, and especially in choosing the word actual conduct, that the Sentencing Commission also imposed limits on the kinds of things that can constitute a Grade B violation. We wouldn't say, for example, that in Note 1, because we want a broader Note 1, that we can evaluate whether the defendant's intended conduct constituted a felony. The fact that they use the word actual conduct imposes a limit on the kinds of things we can consider in deciding whether the offense... Well, but I thought it also simplified things, because effectively what they were saying is, doesn't matter if you're uncharged with this conduct, it doesn't matter if you plea out or anything like that, you look at what you look at what the defendant or the offender actually did. That is absolutely the purpose of that Note, but it didn't try to achieve that purpose of having a broader Note 1 at all costs. Isn't all that's happening though, and what Judge Nelson is saying, when you focus on the actual conduct, what you're eliminating is the way that offense was charged, but it still leaves the person as whoever that person is, and here he is a repeat offender, not necessarily a repeat offender, but he's somebody with baggage that he carries to that particular offense. It is absolutely the case that the primary purpose of Note 1 is to make sure that uncharged conduct can be considered for a violation. But what do you do in a situation like felon in possession? You can't parse status versus conduct there too finely, because the very thing that makes felon in possession of a firearm illegal is that the status of being a felon before you possess the firearm. You're saying that just wouldn't qualify at all for a violation of supervised release. No, it would qualify, and that's precisely why we have a note though, is because the language itself doesn't, of its own force, necessarily embrace that offense. If it were the case that a prior conviction could obviously be considered in determining the maximum punishment in the case, then there would be no need for Note 5. But aren't there a lot more offenses like that, where the actual status may dictate that it's violative or criminal? In other words, you're putting the district courts in a position of parsing conduct and status, and the circuit courts, the 11th Circuit is the one I'm thinking of, dealt with this and said, well, you know, the status informs the conduct, and the conduct informs the status. I mean, they don't say it that way, but they're not, there's a nice simplicity about that. So if we take, for example, 1326, or we take SORNA, cases where the defendant's status is an element of the offense, we might have, there might be a very good case that those cases would come out the other way, because in that case there is no consideration of the offense at all, unless you also consider that as an offense. In this case, the prior conviction is considered on the x- axis of the chart in 7b.1.4, now 7c.1.5, so you're not left in a position of excusing the defendant entirely from offenses that violate the terms of supervised release when you consider what the proper punishment is under 7c.1.5. I want to point out as well that you could have a, the guideline could have very easily been written the way that the government is advocating today, if it appeared something like 2L.1.2. 2L.1.2 says that any conduct, that when the defendant engages in conduct that at any time resulted in a conviction, or resulted in a sentence of a certain amount of time, then that gives you your bump under 2L.1.2. Well, this, the guideline doesn't read conduct that could have resulted in a punishment of more than a year. What it reads is conduct constituting an offense punishable by more than one year. So the conduct itself has to constitute the whole offense that gives you more than one year's imprisonment. We wouldn't say that breaking into somebody's house without permission constitutes burglary. We'd say it constitutes trespasses, and if you added another element or ingredient, then you could get to burglary. Let me ask you, this has been mentioned a few times, but I don't recall it in any of the briefing. Do any of the changes help us in understanding it's effective November of 1990, amended several times? Nothing in that back story would help us understand what application note one means? To me, I, the language appeared exactly the same when it emerged in 1990 as it does today. I figured you do. Yeah. Now the 7C, the introductory commentary to the new guideline does provide us some help with respect to the second issue before the court today, which is whether or not the court plainly erred in considering the need for just punishment, in which it stresses that the the punishment of the new conduct, even the new conduct, not necessarily the underlying offense, should not be the primary concern of a revoking court, and it should leave the punishment of the new conduct, the new offense, to the state court or whichever other court deals with the defendant. And in fact, in that case, in this case, at page 228 of the record, counsel specifically called that to the attention of the district court and gave the district court a chance to minimize the impact or its consideration or make a statement saying that it had minimal consideration of the need to punish the defendant's conduct on supervised release, and with characteristic integrity, the district court said, declined that opportunity. What it said is, I agree it's not a primary concern, but it is a valid concern, which makes clear that it is playing a role in the sentence. Let me ask you, let's move to that issue about the Supreme Court's opinion. It seems to me that the Supreme Court made a point that the underlying offense, that you cannot use retribution as a factor, is the underlying offense, the offense for which the supervised release was first issued. It's very clear on that, and then footnote 5, I think, of the opinion says we're not making any decision, really, about what I think we're talking about now, is whether retribution or anything else that was an issue in the first part of that opinion is in play. It seems to me that since this case, we've had an unpublished opinion, Johnson, that you told us about, but doesn't Estrella, Esteros, which specifically says that the conviction that we're concerned about that you can't apply retribution to, is the underlying conviction. Doesn't that overrule our prior case law that said, really consistent with what you're arguing to us now, that anything that looks like it's retribution for the offense itself that led to the revocation is improper? That's not the right way to define that anymore. So, a few points about that. I think the answer is no, it doesn't overrule. I know what my yes or no question was, but to elaborate. I recall the question as, does it overrule our prior precedent that helps me? And my answer is no. So, I don't think it overrules Sanchez and Rivera, primarily because it disclaims any holding on that effect, and it's very difficult to say. But doesn't Sanchez define the wrong term incorrectly as to what is being referred to by, is it conviction? I'm trying to think now what the word is. I mean, but Sanchez, I think, misdefines the statute. I think that's a, perfectly reasonable question to raise at an en banc hearing. But not if the Supreme Court's overruled it. So, I disagree that the Supreme Court has unequivocally overruled Sanchez. I think that's a certain view of precedent that says, oh, we have a new, we have new guidance from Asteris. Let's start over on a clean slate and reconsider all of our prior precedents. That's a certain view of the relationship between circuit precedent and Supreme Court precedent, but I don't take it to be this court's view of the relationship between. Do you read our en banc decisions that overrule, that quite frequently interpret Supreme Court opinions as overruling? But it doesn't seem to me that it's reacting to the fact that it's en banc. It's just stating this is now the law after the Supreme Court. I mean, don't need to get into that particular dispute, I guess, but this, this court is bold to overrule its own precedent, and I don't think it requires en banc if the Supreme Court opinion is clear enough. So, if the Supreme Court opinion is clear enough, but I don't see how it can be clear enough to say that it unequivocally overrules Sanchez and Rivera and Miller if, number one, you have Note 5 disclaiming any impact on that, or disclaiming any holding as to that. Two, if we look at the third full paragraph in Part 3A, which is citing Granderson and Johnson, and which tells us that in general, revocation and supervised release is forward-looking. It's not about punishment and retribution. So there's at least some hook in Asteris to say that the, the view of Rivera and Sanchez about the elision of A2A is still valid, still has some... Let me ask you, Mr. Page, what should a district judge be able to consider? You have whatever the underlying crime is that led to supervised release, but either a quite vile offense occurred that led to the revocation or something minor or whatever. Surely the district judge can consider the nature of that separate offense in order to determine what to do under the guidelines even on setting a new sentence. It can consider that for the purposes of deterrence. It can consider that for the purpose of the need to protect the public. It can consider that in determining whether or not supervised release is succeeding in rehabilitating the defendant. And I certainly understand that all of those overlap with the rationale for just punishment and consideration of the seriousness of the offense and the other forbidden factors under A2A. It seems so artificial. I understand what you're saying. You can walk around, but it seems a little artificial not to consider the nature of that offense that led to revocation. I think it... How that offense needs to be punished as itself. This is a I'm saying no. And the reason that I'm saying no is simply that it is, as I understand it, this court's controlling precedent which has yet to be overruled and which Esteris does not deal with and which Esteris in part affirms in that situation. In fact, you could say that the entire idea of separating out the factors in A2A from the rest of it is a bit artificial and it's difficult to parse that line, but Congress did that. We're here on plain error review, right? Yeah. And if it's clear that the district court would have imposed the same sentence, I know the district court judge did not say so, but it seems very clear from the reading of the transcript, does it not, that the court wanted to impose a higher sentence to, because of the breach of trust, because of a lot of reasons, even because of this improper factor. But if the court was going to impose the same sentence either way, it doesn't affect the defendant's substantial rise, does it? If it would have imposed the same sentence either way. I think that that is not the proper reading of the record. If you look at page 228 of that, the court has a chance to back off of that factor and it declines that opportunity and it says holistically this is a part of the important part of the picture. She actually said, I agree it's not a primary goal, but just to make sure we're on the same page, this court sees that as a legitimate concern, along with those things you mentioned, and then she says holistically. So it sounds to me like she's taking it into consideration. That is certainly my reading. Thank you. Thank you counsel. May it please the court. Lauren Murphree for the United States. I too will start with a guideline issue in this case. District Court correctly classified Mr. Perry's decision to evade arrest while on supervised release as a grade B violation of the terms of that release because Perry had the prior conviction for evading, making his actual conduct punishable by more than a year in prison under Texas law. And that approach is consistent with the second, third, fourth, sixth, seventh, ninth, tenth, and eleventh circuits. With respect to all those smart judges, it doesn't mean Mr. Page has the better of just a textual argument. Conduct is, to me, a fairly clear word. Forgetting the numbers, though you did well on remembering them just now on the other circuits, how can you define conduct to really include status or whatever other word you want to use? Looking at the phrase actual conduct in the context of the application note. Application note 1 directs or instructs that is a mandatory condition of supervised release that a defendant not commit a violation of a federal, state, or local crime. The note goes on to explain that courts are not bound to look to the actual charge or conviction but to the defendant's actual conduct. But of course that conduct only has significance relative to the law that the defendant violated. Here, that law was Texas Penal Code section 38.04, evading arrest or detention. In Texas, evading arrest on foot is a misdemeanor unless a defendant has a prior conviction for evading, in which case it becomes punishable by more than a year in prison. And so viewing Perry's conduct through the lens of the law that he violated, it is punishable by more than a year in prison. And Perry attempts to read the phrase actual conduct as many defendants and other circuits have as actual conduct by a first-time offender with no prior convictions. But read in its proper context, that's simply not what the application note instructs. But the actual conduct is just about what he did, which is he evaded arrest on foot. He ran away from the police officers. I don't know how you extrapolate in all this other stuff into actual conduct. Because all the actual conduct is, to me, is what he did. You're telling me I got to take all these other things into context and that somehow becomes part of the actual conduct? Is that what you're telling me? Not exactly. I mean, yes and no, Your Honor. Yes, his prior conviction should be taken into consideration. But that's because his conduct only has significance relative to the law that he violated. In the actual statute at play here, Texas Penal Code Section 13. Well, I mean, his conduct has significance. His conduct is criminal, evading arrest, without regard for any of his history. That would be criminal conduct, right? Yes, that's correct. The extent to which that conduct is punishable turns on the type of conduct and necessarily on the statute under which that conduct is criminalized. In here, that is criminalized and punishable by more than a year of prison because of his prior conviction. And so his status under this statute is inextricable from his conduct. Like Judge Wilson's example, we can see how a similar scenario would play out for a felon in possession of a firearm. Also, under SORNA, if a defendant has a prior conviction for something that requires them to register as a sex offender, he's required to report with local law enforcement. If the court were to divorce conduct from status, simply not reporting to local law enforcement your address or your intent to move would not on its own be criminal. Could a district court do this? In other words, separate status from conduct? And in this case, considered only Mr. Perry's evading arrest on foot in a vacuum without regard to the prior conviction. Could a district court do that without running afoul of the guidelines? In other words, would it be an abuse of discretion or is it within the court's discretion to do that? I don't believe it would be within the court's discretion, Your Honor, because it would be inconsistent with the sentencing goals inherent in revocation sentences. The whole purpose of punishing these supervised release violations is to sanction violations of the court's breaches. Sanction violations of breach of the court's trust, excuse me. The violation rates themselves permit proportionally longer terms relative to the degree of the breach of trust. That breach of trust is greater where a defendant is a repeat offender, as we have here. The Second Circuit has noted this in the recent Ramos decision, stating that the different dimensions of the violation table measure two different things. The criminal history category measures the likelihood of recidivism, whereas the violation grade measures the wrongfulness of the act. Here, the wrongfulness of the act is greater because Perry is a repeat offender. And so because the purpose of supervised release revocation hearings is to determine the gravity of the breach of trust and that conditional liberty that a defendant is granted, his prior offenses should be considered. This approach is also consistent with other guideline provisions and other commentary. Most relevant here is application note five to the same guideline provision 7B1.1, which classifies possession of a firearm as a grade B violation if the defendant has a prior felony conviction. Here, the commentary is taking into consideration a prior conviction. And that itself really undercuts Perry's argument in the briefing that he is being unjustly punished for conduct that occurred prior to his term of supervised release beginning. We see the commentary's intent to take those things into consideration, and that's consistent with a plain reading of application note one as well. Well, doesn't that, the very fact that the sentencing commission added application note five, some suggestion that without it, there'd be a problem for felony possession? I mean, it was to elaborate that for this serious status crime, felony possession of a firearm, we want to at least make clear, but perhaps even change the rules of application note one. I mean, I do see that application note five is sort of a mixed bag for you in that it's saying application one may not get you where you need to be for felony possession. Not exactly, Your Honor. I would argue that application note one, as many courts, including this court, have interpreted, is a broadening principle, not a limiting one. And I don't think, I don't know that application note five changes that. When we look to application note one, courts consistently apply that to or interpret that note to say that courts are not bound by uncharged conduct or conduct that does not lead to an ultimate conviction. In United States v. Barber, this court affirmed a district court's interpretation of application note one when the district court classified a defendant's arrest for a controlled substance offense as a grade A violation of his supervisor's, based on the amount of drugs he was arrested with, even though he was ultimately convicted of misprison of a felony, which would have been a lower grade violation were a court just to look at to the conviction. So that's an example of where even this court is reading application note one to broaden what a court considers and not to limit it. Unless the court has any further questions on the guideline issue, I'll move to Perry's second issue. The district court did not improperly rely on the prohibited retributive sentencing factors when it revoked Perry's term of supervised release. It's important when reviewing the court's comments at sentencing to take a step back and look at where Perry was just procedurally before the district court. This was the third time Perry had appeared before the district court in as many years. In 2022, the district court first sentenced Perry to time served and three years of supervised release. In 2024, the district court revoked Perry's term of supervised release and sentenced him to six months in prison and a two and a half year term of supervised release. And then just one year later, in May of 2025, another petition is filed alleging Perry has violated the terms of that supervised release. And so it is against that backdrop. The court is understandably frustrated and disappointed. The court's own words. But the court is, the court, as I read the record, is wrong in considering this prohibited factor. The Supreme Court's taken it off, off limits. And the court, the district court here says, no, I think that's part of it. She uses the word holistically. The district judge does. I mean, so she's clearly considering an improper factor. Not necessarily, Your Honor. But she says it. She does say two times I'm punishing you for your conduct. But this court has said that punishing or sanctioning a defendant for violating the terms of supervised release, a court can punish a defendant's breach of the court's trust. And we see in the record many times that the court is focused on Perry's breach of the court's trust. The court uses the word disappointed six times in its sentencing colloquy. At ROA 233, 236, and 241, the court states that it's heartbroken that Perry didn't do anything. Well, the court says all those things. Clearly the court is relying on a number of permissible factors. What do we do, though, assuming the court relied on an impermissible factor as well? Without agreeing that the court did rely on an impermissible factor, the court was very concerned with permissible factors. And under plain error review, there was not an express invocation of a prohibitive factor, but the court did expressly invoke and discuss many permissible factors like Perry's history and characteristics, the degree of the breach of trust, and deterrence. And the Supreme Court in Estera said that much will turn on whether a defendant objects. And under this record, given the court's statement at sentencing, we cannot show a clear or obvious error or any reasonable likelihood that the district court would impose a different sentence on remand. At ROA 242, the court states, I can't trust you is our problem. The court's focused on the breach of trust. And at ROA 248, the court again tells Perry, you and I were in a relationship. So the focus here is on the breach of trust and not on a prohibited retributive factor. The court also focused on deterrence. ROA 236 and 237, the court noted its desire that its increasing sentences would have deterred Perry from a future of lawbreaking, but they did not. And at ROA 242, the district court all but begs Perry to make better choices. So viewed in its context, the statement, I'm punishing you for your conduct, it's not necessarily an improper retributive factor, but Perry's conduct leading to the violation of the terms of the supervised release was a breach of the court's trust. And this court has stated in Pinner and in Canoe that the district court is permitted to consider conduct leading to the revocation when measuring the breach of the court's trust. Most recently, in United States v. Johnson, cited in the government's 28-J, this court noted the fine line between punishing the violation itself and punishing the breach of the court's trust. So is your argument that the context, everything the district court said, the exchanges back and forth, when the court says I'm going to punish you for your conduct, the court is talking about the conduct leading to the revocation of supervised release, not the underlying conduct, not some improper thing? Exactly, Your Honor. And on plain error review, there at least was not clear, obvious error because there could be multiple interpretations of that statute. Of course, Perry argues that that was an improper retributive statement. The government's argument is that the district court was permitted to punish or sanction the violation of the breach of the court's trust. And so on plain error review, Perry cannot show clear, obvious error or any effect on his substantial rights. Are you in a position to address the questions I was asking, posing counsel about the possible impact of the steris, which is very clear that offense is referring to the underlying offense that led years ago or a week ago, however long it took to the supervised release that was then violated, now is being considered for revocation. Are you in a position to address whether that changes our case law? And so long as this judge was only looking at the actions that led to revocation, that our case law may not be properly addressing that, and that may be an open question. I will do my best, Joe Southwick. Steris certainly held that the 3553A2A factors cannot be applied to an underlying offensive conviction. But a steris noted in a footnote that it was expressing no opinion on whether those factors could be applied to the supervised release violation. Whether or not those factors could be considered in terms of... Is that arguably what this district judge was doing? Applying it to the seriousness of the violation and not prior conduct? Yes, Your Honor. There is no reasonable reading of the record that the court was punishing Perry for the offensive conviction, for illegal receipt of a firearm while under indictment. So under that reading of a steris, there certainly is no error. But because that wasn't the question presented in a steris, I don't know that that is a direct overruling of this court's precedent. It does appear to be at least in tension with this court's holding in Sanchez and Rivera that view the prohibited factors as not being able to be applied to the supervised... I'm going to go back to Miller, where Miller I think is very clear that when they're saying offense, they're referring to the actions that are leading to revocation. I don't know if the other cases are as clear. But I think Miller has been significantly affected. Anyway, proceed. That's right, Your Honor. But because that wasn't squarely presented in a steris, I don't know that it overrules this court's precedent. But even under this court's precedent, it does unequivocally state that a court cannot consider the prohibited retributive sentencing factors in terms of the supervised release violation. Perry still cannot show error because the court, when its comments are viewed in the whole of the sentencing colloquy, was sanctioning Perry for the breach of the court's trust. So even setting a steris aside for now, because on plain error review, that question isn't squarely presented here either. Perry cannot show error. What's your best case on plain error review to support what you're asking us to do? That a clear violation of Sanchez or whatever else is still subject to plain error review? And if so, what is in this transcript that will allow us to hold that? Two cases, Your Honor. First, most recently, this court's decision in United States v. Johnson. Non-presidential. Okay. Looking at presidential opinions, we can look at the Canoe case. There, the defendant had absconded while on supervised release multiple times. The court there was also visibly frustrated with Canoe's failure to comply with the terms of release. And this court stated that the district court was or permissibly violated Canoe's breach of the court's trust. And sanctioning that conduct was not punishing him for the violation, but for the breach of the court's trust. Well, that's interpreting the actual language. I was talking about plain error, that even if it's a violation, that plain error can still lead to affirmance. What's your best case for that? I mean, not that we're interpreting what the district judge said not to run afoul of this case law, but actually say it does run afoul of the case law, but it's clear enough it would be the same sentence or for some other reason. You have a particularly good precedent for that. That's right, Your Honor. In Canoe was plain error review. And this court stated that where there is not an express indication of a prohibited factor, but instead we do have indications of the permissible factors, the district court in this case as well cited Section 3583E and said, I am not considering any of the factors I'm not permitted to consider. And then went on to talk about Perry's history and characteristics, breach of the court's trust, and deterrence. And so on plain error review under this court's precedent, there is no clear or obvious error. All right, counsel. Anything else for us? No, Your Honor. We'll ask the court to affirm. Thank you. May it please the court. My friend is certainly in good company with other circuits that have said that the defendant's prior convictions are inextricable from his or her current conduct. But I personally am a little bit puzzled by that claim. I think that the defendant's conduct on supervised release is perfectly extricable. I hesitate to say that because I'm not sure that's a word, but that there isn't any reason at all that you couldn't say, I'm going to look at the defendant's conduct on supervised release in a vacuum and determine what offense it matches and save the prior convictions solely for determining the criminal history under the x-axis. The defendant's prior act of evading arrest was actual conduct, right? That led up to the prior conviction, but it wasn't a violation of the term of supervised release. So what the specific language that's in Note 1 and that is in the definition calls for us to look at is what the defendant did and what the defendant did alone on the term of supervised release, plug that into the y-axis, and then let everything else fall out on the x-axis. I think the Sentencing Commission wanted one clean measure of what the defendant's conduct on supervised release was, how serious it was in determining an advisory range on that situation, and we can save everything else for the other axis. Why is felon in possession unique? You have Application Note 5. But even without Application Note 5, we could be having the same argument. And not even without. If Application Note 5 were not there, the argument very much would be that the fact that this particular offense was committed by a felon, this felon in possession was committed by a felon, should be taken into account. And it does seem to me that the Sentencing Commission, if we're looking at purpose and whatever, would just as likely have been concerned about any other status as well. I mentioned SORNA several times. You and a friend on the other side have mentioned SORNA. There are other statuses that are important. I'm having a little trouble grasping. Maybe it's not inextricable. Might be closely tied. Might be close together, though. I think the difference between this case, between a prior conviction as a way to aggravate the defendant's sentence, determine the maximum punishment that way, and the kinds of statuses that are elements of another offense, is that if you didn't consider those in determining the defendant's, the gravity of the defendant's conduct on supervised release, the defendant would not be held accountable at all for violating 922g1, or for violating 1326, or violating SORNA. Whereas in this case, the prior conviction is counted. It's counted once in determining the original criminal history category, once in determining the criminal history category again in this case, and then again because whatever the defendant gets here is run consecutively. Moving to the second issue, what the court here said was, I am punishing you for your conduct. And then on 228, when the counsel said to the court, this should not be your primary consideration, it said, this is a valid consideration. If you are going to enforce the prohibition on A2A at all, it has to at least cover this core case, where the district court states its sentencing rationale, states, it doesn't merely mention an inappropriate factor, but states that that is part of the reason for the sentence. And the way that it describes what it's doing essentially tracks A2A, tracks the language in A2A. So there is room in some cases to interpret what the district court is doing as trying to enforce another valid but closely related factor. But if A2A, the prohibition in considering A2A means anything, it has to at least give you clear error when the district court quotes it to you, all but quotes it to you. Does the court have any other questions? Thank you very much. Thank you. Thank you both for helping us understand this case. Take it on a revisement.